# EXHIBIT G

# Baldwin Technologies, Inc.
Environmental and Instrumentation Support Products

**VIA FAX (303) 497-3163**
**AND FEDERAL EXPRESS**

Nancy M. Gertler,
Chief, Contracting Branch
NOAA
Mountain Region Acquisition Division
325 Broadway, MC3
Boulder, CO 80305

Re: Show Cause Notice – GSA Contract GS07F0718N
Order Numbers RA1341-04-4B-0678
And RA 1341-06-NC-0649

Dear Ms. Gertler:

Please consider this letter the response to your letter dated August 22, 2007 request that Baldwin Technologies, Inc. respond to your Show Cause notice by September 1, 2007. I will respond to your areas of concern in order as presented in your letter dated August 22, 2007.

**Comment No. 1**

**Your Comment**: On June 22, 2007, I sent you a Cure Notice because of your failure to coordinate and manage the above referenced NIST RUPS requirements, to comply with the performance schedule established for the project as identified and incorporated into the cited orders by modifications dated June 1, 2007. The specific issues included energizing switchgear/XFMRS, point-to-point testing, and failure to identify a date for equipment power-up, along with providing a preventive action plan should a power surge or outage occur on the facility.

Baldwin Technologies, Inc.
Environmental and Instrumentation Support Products



b. Riviera Electric: Several parts are on backorder for the fuel piping system by their contractor AMI. Reviera Electric expects delivery of these parts during the week of September 4, 2007.

c. In addition, SatCon and Riviera Electric want progress payments they believe are due on their work. Since my company received your Show Cause Notice, I have been in contact with both SatCon and Riviera Electric and I believe that my company has established a plan with both companies which will allow for the timely completion of this contract. (See SatCon letter – Exhibit 2)

**Comment No. 3**

**Your Comment:** Further, last week we had a conversation on August 16, 2007 in which you stated you would provide two separate schedules on completing performance, and how you would pay your subcontractors monies past due for services performed along with any of their future invoices against the above referenced orders. Additionally, at that meeting we discussed pictures e-mailed to you, which show you that the site conditions are in a dangerous and unacceptable state. Along with the other issues, you indicated that you would immediately take care of this. As of this date, you have failed to pay your subcontractors, establish a payment schedule, establish a performance schedule, and to perform the work.

Response: On August 16, 2007, as requested, my company issued a NIST Progress Schedule showing payment plans with amounts setting forth paid out to SatCon and Riviera at each invoice milestone. (See Exhibit 3) As mentioned in our Monday, August 20, 2007 NIST progress meeting, my company informed NIST that it is committed to draw from the company's line of credit to timely pay both subcontractors. My company can draw on its line to satisfy the subcontractors' payment requests when my company sends invoices which are approved by NIST.

Baldwin Technologies, Inc.
Environmental and Instrumentation Support Products



Response: Respectfully, my company believes that it did timely respond to the Cure Notice. Attached hereto please find my letter, dated June 29, 2007, responding to the Notice. (See Exhibit 1) If this letter did not satisfy your request, as set forth in your June 22nd Notice, please understand that there was no intention not to fully respond. Except for the payment issues, which are addressed below, my company firmly believes that it has managed this Rotary UPS project well had has produced a total turn-key solution to your generator RUPS backup system within the scope of the contract requirements.

Please also note that I did follow up, by phone, with Miss. Capitani in your office, concerning my response to the cure notice.

**Comment No. 2**

**Your Comment:** We were given notice from one of your subcontractors, SatCon, by e-mail dated July 20, 2007 that they have not been paid and will perform no further work until receipt of past due payment. The other subcontractor, Riviera Electric, also has not been paid and is no longer performing on the site.

Response: I believe that the email from SatCon you are referring to, July 20, 2007 date is incorrect; the correct date of the SatCon letter is June 28, 2007 (see Exhibit 2). As you are aware SatCon and Riviera Electric have been on the jobsite actively until August 9, 2007. The reasons contractors are not currently on the jobsite are the following:

a. My company and SatCon understand that they need formal approval as specified in the Statement of Work (see Exhibit 3), page 7 line 41, item 1.03.G of the Energization plan (Exhibit 4) and Rotary UPS Site Acceptance test plan (Exhibit 5).

# Baldwin Technologies, Inc.
Environmental and Instrumentation Support Products



Draws on my company's line of credit are not conditioned upon receipt of payment but only on approval of the invoice, so my company believes that it will be able to promptly resolve this subcontractor payment issue upon approval of my company invoices.

In order to move this project along, during the Monday August 20, 2007 meeting with NIST, completion dates were given to Bryan Faktor and Chris Colburn. At the telephone meeting, I emphasize that SatCon will not commit to a schedule until the Energization plan and, most importantly, the Rotary UPS Site Acceptance Test plan has been approved by NIST. It is my understanding that NIST will consider approving the plans as set forth in the Statement of Work, page 7 line 41, item 1.03.G. Time is of the essence, SatCon has several project underway and must schedule technicians in advance.

As to your comments concerning a "dangerous" site conditions, on August 16, 2007, my company and SatCon had a meeting with NIST concerning the allegations of a dangerous site conditions. After the meeting, it is my understanding that SatCon promptly contacted Mike Miller of Riviera Electric, the company in charge of maintaining jobsite safety. Mr. Miller assured SatCon that Riviera Electric personnel would address the site issues the next day. Since then, Mr. Miller has confirmed to my company that the site conditions are safe and secured. In that my company is always concerned about maintenance of a safe site condition, if you know of any information which is not consistent with Mr. Miller's representations, please immediately inform me so I can have my company immediately resolve the problem.

In addition to the above comments, please note that other than the payment issues set forth above, my company has timely paid its subcontractors, in full.

4907 Niagara Road, Suite 206 ❒ College Park, MD 20740 ❒ Phone (301) 345-8977 ❒ Fax (301) 345-9538 ❒ www.baldwintec.com

# Baldwin Technologies, Inc.
Environmental and Instrumentation Support Products



As to the delays mentioned in your letter, please understand that my company has been working very hard to meet the installation timetable required on this project. Please also remember that my company has had to deal with certain delays which were not within its control. For example, it took seven months to receive the purchase order for the second RUPS. Niagara Transformer regretfully took forty-five weeks to delivery the transformer primarily because of copper shortages and the roof of their factory collapsed from the weight of a heavy snow storm. In addition, there were delays in deciding the Campus distribution. There was confusion who was responsible for the Campus distribution. NIST thought that Baldwin was responsible for the distribution while my company believe that NIST and the consulting engineer, HDR, was responsible. It is my understanding that finally, after many meetings and much time spent by my company and our subcontractors, NIST has acknowledged that NIST and HDR are the responsible parties. Similar time and effort was spent by my company and subcontractors when at one point in time NIST suggested that the RUPS enclosures were buildings and needed to comply with codes associated with buildings instead of equipment enclosures.

I believe that the above directly responds to the issues raised in your letter. In addition, please note that my company is proud of the fact that, in its belief, it has produced quality work which exceeds the contract specifications, with improved bearings and additional steel in the installation of the RUPS system. The additional steel and improved bearings will increase service life of the RUPS units. My company has modified the door enclosures, at its cost, and provided enclosures that have weathered 125mph winds. My company has paid expedite shipping costs for Day Tanks, and has spent undue hours responding to the Campus Distribution and enclosure issues.

# Baldwin Technologies, Inc.
Environmental and Instrumentation Support Products



Presently the Rotary UPS units are ready to be commissioned, so my company has almost completed the work it was contracted to due. If your office can assist my company in obtaining approval of the Energization Plan and the Rotary UPS Site Acceptance Test plan, and agree to the August 16, 2007 proposed payment schedule, my company will be able to finish the commissioning of the RUPS units.

I regret some of the problems which have arising in this contract; however, please be assured that my company is proud of the work which it has done and firmly believes that the installed RUPS units will exceed the governments expectations as set forth in this Contract.

Please feel free to contact me at any time to discuss these matters.

Thank you for your consideration.

Cordially,

Mark H. Baldwin, President

# Baldwin Technologies, Inc.
## Environmental and Instrumentation Support Products

June 29, 2007

United States Department of Commerce
National Oceanic and Atmospheric Administration
Office of Acquisition and Grants
Mountain Region Acquisition Division
325 Broadway, MC3
Boulder, CO 80305-3328

Subject: Response to Cure Notice – Order Numbers RA1341-06-NC-0649 and RA 1341-04-4B-0678 Against GSA Contract GS07F0718N to Provide and Install a Rotary UPS (RUPS) Generator Backup System for NIST, Boulder, CO.

Dear Ms Gertler,

This memo is in response to a letter from you Dated June 22, 2007, received June 28, 2007. Based on our meeting today June 29, 2007 at Building 4, the following points were discussed.

A. Energizing of the Switchgear/XFMRS is scheduled for July 7, 2007, awaiting confirmation from NIST personnel and Satcon Personnel.
B. Day Tank Deliveries – 1st Day Tank is scheduled to arrive July 9, 2007, the 2nd Day Tank is scheduled to arrive July 12, 2007. Installation of both Day Tanks is scheduled for July 16, 2007.
C. Point to point checks will be performed by Satcon as part of the Commissioning Process. Tentatively scheduled to begin July 17, 2007.

Attached please reference CCG Facilities Integration Incorporated, Electrical Energization Procedure, Commissioning Plan, and answers to Jim Burleson's questions regarding risk factor to NIST.

Regards,

Mark H Baldwin
President

4907 Niagara Road, Suite 206 College Park, MD 20740 Phone (301) 345-8977 Fax (301) 345-9538 www.baldwintec.com

Exhibit 1 Page 1 of 1

SatCon

SatCon Technology Corporation®
27 Drydock Avenue
Boston, MA 02210-2377
617.897.2400
617.897.2401 FAX
www.satcon.com

June 28, 2007

Baldwin Technologies, Inc
Attn: Mr. Mark Baldwin
4907 Niagara Road
College Park, MD 20740-1100

Subject: NIST: Termination of Contract

Mr. Baldwin:

You are notified that SatCon Technology will consider the NIST Rotary UPS Project, covered by Baldwin Technologies purchase orders 3335-933 & 3775-1171, terminated as of July 9, 2007 due to non-payment. Currently, Baldwin Technologies has two outstanding Invoices 25340 and 25378, which are seven months over due with a total outstanding balance of $233,820.00; the agreed terms per your purchase order is net 30 days from date of invoice. To prevent termination, SatCon Technology requires these two invoices be paid in full and Baldwin Technology gets either a letter from NIST guaranteeing payment in full for commissioning the two Rotary UPS Systems or a letter of credit be established which will guarantee payment of $268,986.00 for commissioning, payable upon completion of commissioning. Please either contact Dave O'Neil or Jim O'Rourke to get these payment issues resolved in a manner that is acceptable to SatCon Technology.

Sincerely,

David B. Eisenhaure
CEO

Cc: Jonathon Bell, Esq., Dave O'Neil, and Jim O'Rourke

Exhibit 2 Page 1 of 1


SATCON Power Systems
STARSINE 2.2MVA NIST RUPS
ONE LINE SYSTEM BLOCK DIAGRAM
MV SWITCHGEAR SECTION
LV SWITCHGEAR SECTION
PCS SECTION
Exhibit 4 Page 8 of 8

**Paul Roach**

|  |  |
|---|---|
| **From:** | Melissa Capitani [Melissa.Capitani@noaa.gov] |
| **Sent:** | Monday, August 27, 2007 11:06 AM |
| **To:** | markb@baldwintec.com |
| **Cc:** | Faktor; Christian F. Colburn; Nancy.Gertler@noaa.gov; dgeary@baldwintec.com; proach@baldwintec.com; Jim.ORourke@satcon.com; richard.brown@doc.gov |
| **Subject:** | Re: RUPS Weekly Status Meeting for August 27,2007 |

Mark ~

During our telephone conversation on August 16, 2007, I explained that it is not the Government's requirement to, nor does the scope of work call for, our acceptance or approval of your energizing or commissioning plans. You had once already set a schedule for testing. The mere existence that a safety meeting was set up by NIST and the NOAA Boulder Campus was notified of a possible power outage on the date originally identified for the testing is acknowledgment of your plan. Your e-mail dated July 25, 2007 postponed the safety meeting.

The site is still in an unacceptable condition. Please refer to my e-mail dated August 16, 2007.

As the weekly meetings are to discuss progress, and no progress has been made, along with the issuance of a Show Cause Notice, there is no purpose in holding any further weekly meetings.

Finally, you are incorrect in your statement that NIST cannot accept e-mail. In an e-mail I sent you on August 19, 2007, I only requested that all future correspondence include a copy furnish to the Contracting Officer, Nancy Gertler. Please produce any evidence that substantiates your claim that you were told you could not e-mail NIST.

Missy Capitani
Contract Specialist
NOAA, MRAD
Boulder, CO 80305
(303) 497-5534

markb wrote:
> Missy,
> At last weeks meeting Bryan and Chris indicated they would resend a email that afternoon showing they acknowledged both the site plan and energization plan.To date this has not been received in this office.
> We require this to set schedules.Until this happens Satcon can not schedule techs and Riviera can not order loadbanks.
> We also have been told by Riviera (Monday 20th of Aug.2007 ) that the site is secure and their is no risk.Please confirm the site meets your criteria for safety.
> Up to you if you want to deliver this info at Mondays meeting or via express mail, since email is not accepted by NIST.
> markb
> ---------- Original Message -----------------------------------
> From: Melissa Capitani <Melissa.Capitani@noaa.gov>
> Date: Fri, 24 Aug 2007 11:39:43 -0600
>
>
>> Mark ~
>>
>> As a result of the Show Cause Notice issued to you via fax on
>> Wednesday, August 22, 2007, unless you desire, the weekly meeting for
>> the RUPS project on the NIST, Boulder, CO Campus will be canceled.
>>
>> Please advise by close of business today if you would like to hold a
>> teleconference meeting on the RUPS project this coming Monday, August
>> 27, 2007 at 9:30 a.m. A lack of a response on your part will be

>> construed as declining the meeting.
>>
>> Regards,
>>
>> Missy Capitani
>> Contract Specialist
>> NOAA, MRAD
>> Boulder, CO 80305
>> (303) 497-5534
>>
>>
>
>
>
>
>
> ___
> Sent via the WebMail system at baldwintec.com
>
>
>
>
>

ADMINISTRATIVE REQUIREMENTS

PART 1 GENERAL

1.01 SECTION INCLUDES

A. Preinstallation meeting.

B. Site mobilization meeting.

C. Progress meetings.

D. Coordination drawings.

E. Submittals for review, information, and project closeout.

F. Number of copies of submittals.

G. Submittal procedures.

1.02 RELATED SECTIONS

A. Summary.

B. Installation Progress Schedule: Form, content, and administration of schedules.

C. Execution Requirements: Additional coordination requirements.

D. Closeout Submittals: Project record documents.

1.03 PROJECT COORDINATION

A. COTR: Contracting Officer's Technical Representative:.

B. Cooperate with the COTR in allocation of mobilization areas of site; for field offices and sheds, for site access, traffic, and parking facilities.

C. During installation, coordinate use of site and facilities through the COTR.

D. Comply with COTR's procedures for communications; submittals, reports and records, schedules, coordination drawings, and recommendations; and resolution of ambiguities and conflicts.

E. Comply with instructions of the COTR for use of temporary utilities and installation facilities.

F. Coordinate field engineering and layout work.

G. Make the following types of submittals to COTR for approval.
1. Requests for interpretation.
2. Requests for substitution.
3. Shop drawings, product data, and samples.
4. Test and inspection reports.
5. Manufacturer's instructions and field reports.
6. Applications for payment and change order requests.
7. Progress schedules.
8. Coordination drawings.
9. Closeout submittals.

PART 2 PRODUCTS - NOT USED

PART 3 EXECUTION

3.01 PREPERFORMANCE MEETING

A. COTR will schedule a meeting after Notice of Award.

B. Attendance Required:
1. Contracting Officer or designated specialist.
2. COTR.



Exhibit 3 Page 3 of 5

3. Contractor.
4. NIST Safety.
5. NIST Security.

C. Agenda:
1. Review of contract/task order.
2. Submission of insurance certificates.
3. Distribution of Contract Documents.
4. Submission of list of Subcontractors, list of Products, schedule of values, and progress schedule.
5. Designation of personnel representing the parties to Contract, Contractor's Job Superintendent and COTR.
6. Procedures and processing of field decisions, submittals, substitutions, applications for payments, proposal request, Change Orders, and Contract closeout procedures.
7. Scheduling.
8. Safety.
9. Security Procedures.

3.02 SITE MOBILIZATION MEETING

A. COTR will schedule a meeting at the Project site prior to Contractor occupancy.

B. Attendance Required:
1. Contracting Officer or designated specialist.
2. Government.
3. COTR.
4. Contractor's Superintendent.

C. Agenda:
1. Use of premises by Government and Contractor.
2. Temporary utilities provided by Government.
3. Security and housekeeping procedures.
4. Schedules.
5. Application for payment procedures.
6. Procedures for testing.
7. Procedures for maintaining record documents.
8. Requirements for start-up of equipment.
9. Inspection and acceptance of equipment put into service during installation period.

D. Contractor shall record minutes and distribute copies within three days after meeting.

3.03 PROGRESS MEETINGS

A. Contractor shall schedule and administer meetings throughout progress of the Work at weekly intervals.

B. Contractor shall m.Make arrangements for meetings, prepare agenda with copies for participants, preside at meetings.

C. Attendance Suggested: Job superintendent, major Subcontractors and suppliers, Government, COTR, as appropriate to agenda topics for each meeting.

D. Agenda:
1. Review minutes of previous meetings.
2. Review of Work progress.
3. Field observations, problems, and decisions.
4. Identification of problems which impede planned progress.
5. Review of submittals schedule and status of submittals.
6. Review of off-site fabrication and delivery schedules.
7. Maintenance of progress schedule.
8. Corrective measures to regain projected schedules.
9. Planned progress during succeeding work period.



Exhibit 3 Page 4 of 5

10. Coordination of projected progress.
11. Maintenance of quality and work standards.
12. Effect of proposed changes on progress schedule and coordination.
13. Other business relating to Work.

E. Record minutes and distribute copies within two days after meeting to participants, with three copies to COTR, Government, participants, and those affected by decisions made.

3.04 SUBMITTALS FOR REVIEW

A. When the following are specified in individual sections, contractor shall submit them to COTR for review:
1. Product data and materials.
2. Shop drawings.
3. Samples for selection.
4. Samples for verification.

B. Submit to COTR for review for the limited purpose of checking for conformance with information given and the design concept expressed in the contract documents.

C. Samples will be reviewed only for aesthetic, color, or finish selection.

D. After review, provide copies and distribute in accordance with SUBMITTAL PROCEDURES article below and for record documents purposes described in Section - CLOSEOUT SUBMITTALS.

3.05 SUBMITTALS FOR INFORMATION

A. When the following are specified in individual sections, contractor shall submit them to COTR for information:
1. Design data.
2. Certificates.
3. Test reports.
4. Inspection reports.
5. Manufacturer's instructions.
6. Manufacturer's field reports.
7. Other types indicated.

B. Submit for COTR's knowledge and approval as contract administrator or for Government.

3.06 SUBMITTALS FOR PROJECT CLOSEOUT

A. When the following are specified in individual sections, Contractor shall submit them to COTR at project closeout:
1. Project record documents.
2. Operation and maintenance data.
3. Warranties.
4. Other types as indicated.

B. Submit for Government's benefit during and after project completion.

3.07 NUMBER OF COPIES OF SUBMITTALS

A. Documents for Review: Submit 3 copies.

B. Documents for Information: Submit 3 copies.

C. Documents for Project Closeout: Make one reproduction of submittal originally reviewed..

D. Samples: Submit the number specified in individual specification sections; one of which will be retained by COTR.
1. After review, produce duplicates.
2. Retained samples will not be returned to Contractor unless specifically so stated.

3.08 SUBMITTAL PROCEDURES



Exhibit 3 Page 5 of 5